1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**
9           **CENTRAL DISTRICT OF CALIFORNIA**
10

ELLEN LEE and CHUNG LEE;                  Case No. 5:20-cv-01133-SPG-SHK
Individually, and on Behalf of the Class;
and HAMID R. TAVAKOLIAN,                  **ORDER GRANTING, IN PART,**
Individually only,                        **PLAINTIFFS ELLEN LEE AND**
                                          **CHUNG LEE'S MOTION FOR CLASS**
                    Plaintiffs,           **CERTIFICATION [ECF NO. 115]**

        v.

GREAT AMERICAN LIFE INSURANCE
COMPANY, an Ohio Corporation,
                    Defendant.

        Before the Court is Plaintiffs Ellen and Chung Lee's Motion for Class Certification. (ECF No. 115-1 ("Motion")).  Having considered the parties' submissions, oral arguments, the relevant law, and the record in this case, the Court GRANTS, in part, the Motion.

## I.    BACKGROUND

### A.    Factual Background

In approximately 2001, Plaintiffs Ellen Lee[1] ("Ms. Lee") and Chung Lee ("Mr. Lee," and, together with Ms. Lee, "Plaintiffs") purchased term life insurance policies from Defendant Great American Life Insurance Corporation ("Defendant").  (FAC ¶¶ 37–38). Plaintiffs named one another as beneficiaries on their respective policies.  (*Id.*).  For some period of time, Plaintiffs made premium payments on the policies by automatic bank draft. (*Id.* ¶ 49).

Meanwhile, on January 1, 2013, California Insurance Code Sections 10113.71 and 10113.72 (the "Statutes") became effective.  As relevant to the instant Motion, under the Statutes, life insurance policies issued or delivered in California must "contain a provision for a grace period of not less than 60 days from the premium due date."  Cal. Ins. Code § 10113.71(a).  The Statutes further provide that, to be effective, a "notice of pending lapse and termination of a life insurance policy" must be "mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium."  *Id.* § 10113.71(1)(b).  Finally, the Statutes provide that "[t]he insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons."  *Id.* § 10113.72(b).

In approximately 2021, the bank account from which Plaintiffs had been making automatic payments closed, and Plaintiffs inadvertently failed to provide Defendant with updated banking information.  (FAC ¶ 49).  Defendant subsequently terminated Plaintiffs' policies.  (*Id.*).  Defendant never updated Plaintiffs' policies to contain 60-day grace periods, nor did it provide Plaintiffs with notice of pending lapse 30 days prior to the date

---

[1] At the time Defendant issued the policy to Ms. Lee, she went by the name Yunsun Leem. (ECF No. 92 (First Amended Complaint ("FAC")) ¶ 9).  Ms. Lee changed her name in approximately 2012.  (*Id.*).

on which it terminated Plaintiffs' policies. (*Id.* ¶¶ 43–44, 49). Defendant also did not notify Plaintiffs, "on an annual basis or otherwise," of their right to change their policy beneficiaries. (*Id.* ¶ 47). Although Plaintiffs attempted to remedy the missed payments, by the time they contacted Defendant, Defendant informed them their policies had already lapsed. (*Id.* ¶ 50).

## B. Procedural History

On June 2, 2020, former named plaintiff Hamid Tavakolian initiated this action in federal court.[2] (ECF No. 1). Between October 16, 2020, and December 28, 2021, the case was stayed on Defendant's request pending review of certain related cases before the California Supreme Court and Ninth Circuit Court of Appeals. (ECF Nos. 26, 37). Following resolution of two of these cases, the then-presiding court[3] lifted the stay over Defendant's opposition. (ECF No. 37 at 2). One of these related cases, *McHugh v. Protective Life Insurance Company*, 12 Cal. 5th 213 (2021), merits some discussion. On August 30, 2021, the California Supreme Court held that the Statues apply to *all* life insurance policies in force on or after the Statutes' January 1, 2013, effective date, not simply to policies issued after that date. *Id.* at 220. The court made clear that "[t]he grace period and notice obligations added by sections 10113.71 and 10113.72 do not impact a life insurer's liability for past, preenactment defaults." *Id.* at 230. The Statutes do, however, "extend protections to policies issued before these sections went into effect" in the event those policies enter default after January 1, 2013. *Id.* at 246.

In the time since the California Supreme Court issued its decision in *McHugh*, litigation in this case has proceeded, and discovery is now closed. (ECF No. 109). On

---

[2] On Mr. Tavakolian's request, the Court has since dismissed his claims with prejudice. (ECF No. 119).

[3] This matter transferred to the currently presiding Court on June 28, 2022. (ECF No. 50).

October 27, 2023, Plaintiffs filed the instant Motion, seeking to certify a class consisting of:

> All owners, or beneficiaries upon a death of the insured, of Defendant's individual life insurance policies issued in California that Defendant lapsed or terminated for nonpayment of premium on or after January 1, 2013, without first providing every notice, grace period, and offer of designation required by Insurance Code Sections 10113.71 and 10113.72.

(Mot. at 13). After unsuccessfully moving for another stay, *see* (ECF No. 130), Defendant filed its Opposition to Plaintiff's Motion on March 13, 2024, (ECF No. 133 ("Opposition"). Plaintiffs replied in support of their Motion on April 3, 2024. (ECF No. 136 ("Reply")).[4]

## II.   LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011) (internal quotation marks and citation omitted). The party seeking class certification bears the burden of satisfying each of the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequate representation—and at least one requirement of Rule 23(b). *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019). Rule 23 is more than a "mere pleading standard." *Dukes*, 564 U.S. at 350. Instead, it requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the Rule." *Id.* at 350. Plaintiffs seeking class certification "must actually prove—not simply plead—that their proposed class satisfies

---

[4] The Court is also in receipt of Plaintiffs' Application for Leave to File Documents Under Seal. (ECF No. 116 ("Application")). Upon review of the Application, it is evident that Plaintiffs seek to file certain documents that Defendant considers confidential in conjunction with the Motion; Plaintiffs do not take any position on whether the documents contain confidential information. To the extent Defendant wishes to have certain material sealed, in full or in part, the Court ORDERS Defendant to submit a sealing application that complies with Local Rule 79-5.2.2 within fourteen (14) days of this Order. If Defendant no longer seeks to seal some or all of this material, the Court ORDERS Defendant to file unredacted versions of the relevant exhibits within fourteen (14) days of this Order.

each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 275 (2014).

Before certifying a class, the Court must be "satisfied, after a rigorous analysis," that the prerequisites of Rule 23(a) and (b) are satisfied. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Determining whether Rule 23's requirements have been met may require some analysis of the underlying claims. *Dukes*, 564 U.S. at 351 (recognizing that "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"). The Supreme Court has strongly cautioned, however, that "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). If the court is not fully satisfied that the requirements of Rule 23 have been met, certification should be denied. *Falcon*, 457 U.S. at 161.

## III. DISCUSSION

### A. Whether Plaintiffs Meet the Requirements of Rule 23(a)

Rule 23(a) imposes four prerequisites that must be met in order for a lawsuit to proceed as a class action: (1) "the class is so numerous that joinder of all members is impracticable" ("numerosity"); (2) "there are questions of law or fact common to the class" ("commonality"); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality"); and (4) "the representative parties will fairly and adequately protect the interests of the class" ("adequacy"). Fed. R. Civ. P. 23(a). The party seeking to proceed on a class-wide basis bears the burden of satisfying each of Rule 23(a)'s requirements. *Willis*, 943 F.3d at 885.

#### 1. Numerosity

To satisfy the prerequisite of numerosity, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Joinder is impracticable where difficult or inconvenient; it need not be impossible. *Keegan v. Am. Honda Motor Co*., 284

F.R.D. 504, 522 (C.D. Cal. 2012).  Although there "is no numerical cutoff for sufficient numerosity," "40 or more members will generally satisfy the numerosity requirement." *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2019 WL 4509301, at *4 (C.D. Cal. Apr. 23, 2019).  *See also Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).

Plaintiffs argue they have established numerosity because there at least 10,000 members in the putative class. (Mot. at 21).  Defendant does not contest this issue. (Opp. at 11).  Where, as here, "the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982).  *Cf. Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) ("Courts have held that numerosity is satisfied when there are as few as 39 potential class members.").  The Court concludes that Plaintiffs have met their burden to establish numerosity of the proposed class.

### 2.    Commonality

A party seeking to satisfy Rule 23(a)(2)'s commonality requirement must demonstrate that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A plaintiff seeking to proceed class-wide meets the commonality requirement where their claims "depend upon a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks and citation omitted).  Thus, where the circumstances of class members "vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (citation omitted).

Plaintiffs contend they have established commonality because each putative class member's claims involve an analysis of whether Defendant failed to comply with the Statutes. (Mot. at 22–25).  The Court agrees.  Indeed, courts in this Circuit have repeatedly found that putative class claims concerning insurers' compliance with the Statutes' notice

provisions meet Rule 23(a)(2)'s commonality requirement. *See, e.g.*, *Farley v. Lincoln Benefit Life Co.*, No. 2:20-cv-02485-KJM-DB, 2023 WL 3007413, at *4 (E.D. Cal. Apr. 18, 2023) ("[T]he overarching common question of law and fact raised in plaintiff's complaint is whether defendant violated California Insurance Code sections 10113.71 and 10113.72 by not providing the statutes' required procedural safeguards prior to lapsing and/or terminating life insurance policies."), *reconsideration denied,* No. 2:20-cv-02485-KJM-DB, 2023 WL 5488426 (E.D. Cal. Aug. 24, 2023); *Bentley v. United of Omaha Life Ins. Co.*, No. 15-7870, 2018 WL 3357458, at *8 (C.D. Cal. May 1, 2018) (finding commonality established when "[a]ll the class members have suffered the same alleged injury: they are beneficiaries of policies that [defendant] canceled before providing statutorily required notice"); *Small v. Allianz Life Ins. Co. of N. Am.*, No. CV 20-01944 TJH (KESx), 2023 WL 4042593, at *2 (C.D. Cal. May 23, 2023) ("[T]here is at least one class-wide common question—whether all class members were harmed by [the defendant's] alleged failure to comply with the Statutes."); *Poe v. Nw. Mut. Life Ins. Co.*, No. 8:21-cv-02065-SPG-E, 2023 WL 5251875, at *4 (C.D. Cal. Aug. 14, 2023) (accord), *reconsideration denied*, No. 8:21-cv-02065-SPG-E, 2023 WL 6852018 (C.D. Cal. Sept. 27, 2023).

In opposition, Defendant advances several arguments, none of which overcome the Court's conclusion that Plaintiffs have met their burden to establish commonality. First, Defendant mounts an attack on the merits of Plaintiffs' case, contending that Plaintiffs' lawsuit rests on an incorrect interpretation of the Statutes. (Opp. at 12–13). But a commonality inquiry focuses on whether "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), not on a plaintiff's likelihood of success on those issues.

Defendant also argues that any determination of liability would require "individualized inquiries." (Opp. at 13–14). This argument confuses commonality under Rule 23(a)(2) with Rule 23(b)(3)'s predominance requirement, discussed in more detail below, Section III.B.2.a. Although "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that

questions common to the class 'predominate over' other questions," the inquiries proceed separately. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997) ("*Amchem*"). "[P]laintiffs must prove that there are questions of law or fact common to class members that can be determined in one stroke," *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir.) (internal quotation marks omitted), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022), but it is not proper to deny commonality on the basis that individualized inquiries predominate over common questions, especially because courts examine predominance only "if applicable," *Halliburton Co.*, 573 U.S. at 276.

Finally, Defendant contends that Plaintiffs have failed to establish a common question "that is central to the validity of each claim." (Opp. at 14 (quoting *Johnson v. City of Grants Pass*, 72 F.4th 868, 887 (9th Cir. 2023) (emphasis omitted)). This argument combines aspects of Defendant's merits-based critique of Plaintiffs' case and its predominance argument. In essence, Defendant asserts that, because Plaintiffs' theory of liability "is baseless" under the Statutes, they have failed to present a common question. (*Id.*). Additionally, Defendant emphasizes the need to evaluate other elements of Plaintiffs' breach of contract claims on an individual basis to determine whether Defendant may be held liable. (*Id.* at 16). As the Court has already explained, however, the fact that Defendant disputes the merits of Plaintiffs' claims does not render them uncommon, and the questions regarding injury and causation Defendant raises are better evaluated in the context of predominance under Rule 23(b)(3). "Whether defendant provided the required safeguards in compliance with California law can be resolved in 'one stroke.'" *Farley*, 2023 WL 3007413, at *4 (quoting *Dukes*, 564 U.S. at 350). Plaintiffs have satisfied their obligation to establish a common question.

### 3. Typicality

Rule 23(a)(3) requires that a class representative's claims or defenses be "typical of the claims or defenses of the class" they seek to represent. Fed. R. Civ. P. 23(a)(3). The

purpose of the typicality requirement is to "ensure[] that the interest of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). "A court should not certify a class if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Just Film*, 847 F.3d at 1116 (internal quotation marks and citation omitted).

Here, Plaintiffs contend that their claims are identical to every other putative class member's: that Defendant lapsed or terminated their policies without the notice required by the Statutes. (Mot. at 25). Plaintiffs also argue that they share the same injury as putative class members in the form of lost policy coverage and benefits. (*Id.*). In opposition, Defendant argues that Plaintiffs, who are both living policyholders, have not suffered the same injury as putative class members who are beneficiaries of policies of decedent insureds and thus cannot properly represent those with claims to unpaid death benefits. (Opp. at 19). Defendant also contends that Plaintiffs are atypical because they did not respond to Defendant's offer to reinstate Plaintiffs' policies contingent on payment of premiums Plaintiffs would have owed had their policies been in effect, and because, during their depositions, Plaintiffs testified that they did not want their policies reinstated. (*Id.* at 19–20).

Defendant's attempt to distinguish between the injuries suffered by class members based on whether the holder of the underlying policy is deceased appears to conflate the relief requested—monetary damages, declaratory relief, or injunctive relief—with the injury suffered. Conceptually, however, the injury is the same: Defendant allegedly terminated coverage without complying with the Statutes, thereby denying policyholders coverage and preventing their beneficiaries from receiving any future death benefit. *See*

*Farley*, 2023 WL 3007413, at *6 (holding that "[p]laintiff and the putative class members suffered the same injury" when "defendant violated plaintiff and all putative class members' procedural rights by not complying with the applicable statutes prior to lapsing and/or terminating their policies for nonpayment of premiums"); *Small*, 2023 WL 4042593, at *2.

As for Defendant's argument that Plaintiffs are atypical because they did not respond to its apparent settlement offer, Defendant does not present the Court with any caselaw in support of this claim. Although class representatives' voluntary settlement of their own, personal claims can "render[] class claims moot," *Brady v. AutoZone Stores, Inc.*, 960 F.3d 1172, 1175 (9th Cir. 2020), an unaccepted settlement offer has no such effect, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 163 (2016), *as revised* (Feb. 9, 2016) ("Under basic principles of contract law, [a defendant's] settlement bid and Rule 68 offer of judgment, once rejected, ha[ve] no continuing efficacy."). Additionally, Plaintiffs dispute that the settlement offered by Defendant would make them whole—they argue that they need not tender unpaid premiums for the period of time during which Defendant lapsed their policy. (Reply at 17). Even assuming that certain settlement offers might be capable of mooting a class representative's claim and rendering them atypical, the Court concludes that Defendant's proposed settlement is not such an offer.

Defendant also argues that Plaintiffs cannot establish typicality due to certain statements Plaintiffs made in deposition. Specifically, when counsel for Defendant asked Mr. Lee, "[D]o you want your Great American policy put back active [sic]?", Mr. Lee responded, "No." (ECF No. 133-4 at 8–9). Similarly, when counsel for Defendant asked Ms. Lee, "[A]re you seeking to have your policy with Great American Life Insurance Company put back into place?", Ms. Lee answered, "No, no." (*Id.* at 14). Defendant contends that this testimony means that "Plaintiffs have no interest in pursuing this action because they do not want their policies." (Opp. at 21). After consideration, the Court concludes that this argument comes from a misunderstanding of Plaintiffs' claims. Under Plaintiffs' theory of the case, their policies never lapsed, making any inquiry regarding

"reinstatement" inapposite.[5]  (Mot. at 9).  *See also, e.g.*, *Moriarty v. Am. Gen. Life Ins. Co.*, 686 F. Supp. 3d 1027, 1032 (S.D. Cal. 2023) ("As a result of Defendant's failure to give the required notice, Mr. Moriarty's life insurance policy did not lapse."), *motion to certify appeal granted*, No. 3:17-cv-1709-JO-WVG, 2023 WL 6280967 (S.D. Cal. Sept. 26, 2023).  In sum, the Court disagrees with Defendant's assertion that Plaintiffs "do not want their policies," *see, e.g.*, (Opp. at 7), and concludes that Plaintiffs are sufficiently typical of the proposed class.

### 4.  Adequacy of Representation

Courts may certify a class action only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.  "The adequacy inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (internal quotation marks and citation omitted).  "[I]f the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members," they are not an adequate representative.  *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010).

Plaintiffs argue that they have a "fundamental shared objective" to obtain a ruling on behalf of themselves and the putative class and have no known conflicts with the putative class.  (Mot. at 27).  Plaintiffs also contend that they have and will continue to vigorously prosecute the action on behalf of the class.  (*Id.*).  In opposition, Defendant argues that Plaintiffs are in conflict with the putative class and that they are not adequate representatives.  (Opp. at 20).  The Court addresses each of Defendant's arguments in turn.

---

[5] The Court also notes that the statements lack context; Defendant presented each in the form of two-page excerpts from Plaintiffs' depositions.  (ECF No. 133-4 at 8–9, 13–14).

Defendant argues that Plaintiffs have a "fundamental" conflict of interest with other members of the putative class. (*Id.* (citation omitted)). Specifically, Defendant relies on *Amchem* to contend that "Plaintiffs, as beneficiaries to policies with living insureds, have an interest in preserving [Defendant's] funds until their benefits become payable." (*Id.*). Defendant asserts that this purported interest conflicts with "those of beneficiaries whose insureds have died and, thus, whose benefits are allegedly payable." (*Id.*). Defendant appears to misunderstand the scope of the class Plaintiffs seek to certify. The putative class consists of "[a]ll owners, or beneficiaries *upon a death of the insured*," of certain of Defendant's life insurance policies. (Mot. at 13 (emphasis added)). Although Mr. Lee and Ms. Lee happen to be one another's policy beneficiaries, they represent the putative class as living policy owners, not as beneficiaries of yet-unpaid life insurance policies. Indeed, the putative class does not include "beneficiaries to policies with living insureds." (Opp. at 20). Accordingly, although the Supreme Court has held that, after *Amchem*, "a class divided between holders of present and future claims . . . requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel," *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999), the supposed conflict Defendant identifies does not in fact exist. This argument is a red herring.

Defendant's argument that "Plaintiffs have no personal interest in *any* of the relief they purport to seek and, thus, have a conflict of interest with their entire class" likewise does not prevail. (Opp. at 20). As the Court has explained above, Section III.A.3, Plaintiffs' rejection of Defendant's settlement offer and deposition testimony regarding reinstatement does not strip them of their injuries or subject them to unique breach of contract defenses. Defendant also makes a vague claim that statute of limitations issues "implicat[e] individualized inquiries," (*id.* at 21), but this argument has no bearing on the Court's adequacy analysis. The Court concludes that Plaintiffs have met their burden to demonstrate that they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

**B.     Whether Plaintiffs Meet the Requirements of Rule 23(b)**

In addition to meeting the four prerequisites of Rule 23(a) discussed above, the moving party must also "satisfy one of the prongs of Rule 23(b) in order to maintain a class action." *Cervantez*, 253 F.R.D. at 575.   Here, Plaintiffs seek certification under Rule 23(b)(2) and Rule 23(b)(3).   For the reasons explained below, the Court GRANTS, in part, Plaintiffs' request for certification of a class under Rule 23(b)(2) and DENIES, without prejudice, Plaintiffs' request for certification of a damages class under Rule 23(b)(3).

1.     Whether California Insurance Law Requires Strict Compliance With Statutory Notice Provisions

Before addressing Rule 23(b), the Court must address an issue of California insurance law that has split federal district courts since the California Supreme Court decided *McHugh*.   In the years following *McHugh*, district courts evaluating lawsuits alleging non-compliance with the Statutes have followed two main approaches: a strict compliance approach and a subjective intent approach.[6]

Under a strict compliance approach, courts have concluded that insurers' noncompliance with the Statues' notice provisions flatly precludes lapse of insureds' policies. *See, e.g.*, *Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723, 739–40 (C.D. Cal. 2019) (on motion for summary judgment, finding no dispute of material fact that defendant insurer breached "contractual duty to pay [the beneficiary's] life insurance claim" after insurer failed to provide notice required by the Statutes, lapsed policy, and refused to pay death benefits); *Moriarty*, 686 F. Supp. 3d at 1032–33 (rejecting argument

---

[6] The Court declines to use Defendant's "strict liability" language.   Although this formulation makes some amount of intuitive sense, strict liability is a theory of liability under tort law—not contract. *See, e.g.*, *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 362–63 (2012); *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 994 (1991).   Because tort and contract law treat issues of subjective intent and harm differently, the Court wishes to avoid any possible confusion that might result from importing the "strict liability" phraseology into the contract context.

-13-

that "triable issues of fact regarding causation of damages preclude summary judgment" on grounds that such issues "are immaterial for the simple reason that the policy did not lapse").

In contrast, under the subjective intent approach, courts take the position that they must consider insureds' subjective intent, specifically, whether the insureds intended to allow their policies to lapse by intentional nonpayment. *See, e.g.*, *Nieves v. United of Omaha Life Ins. Co.*, No. 21-cv-01415-H-KSC, 2023 WL 2705836, at *9 (S.D. Cal. Mar. 28, 2023) (crediting defendant insurer's evidence that "a significant number of policy lapses were likely intentional on the part of the class members" and concluding that "[a] class member who intentionally chose to let her policy lapse suffers no damages"); *Steen v. Am. Nat'l Ins. Co.*, No. 2:20-cv-11226-ODW (SKx), 2023 WL 4004192, at *12 (C.D. Cal. June 14, 2023) (concluding that "damages cannot be said to result from the insurer's failure to provide an opportunity to designate" where insured never would have chosen a designee in response to notice).

Courts taking the subjective intent approach generally deny certification of 23(b)(3) classes on the grounds that individualized inquiries into insureds' subjective intent will predominate over common questions. *See Nieves*, 2023 WL 2705836, at *9 (concluding that individualized damages analyses would predominate); *Steen*, 2023 WL 4004192, at *14 (finding lack of predominance where "[s]ome violations of the Statutes appear to result in non-lapse and non-termination of policies, while others do not"); *Moriarty v. Am. Gen. Life Ins. Co.*, No. 3:17-cv-1709-BTM-WVG, 2022 WL 6584150, at *4 (S.D. Cal. Sept. 27, 2022) (declining to certify class for lack of predominance where, among other issues, the proposed class "includes policy holders who have known for years that American General terminated their policies"), *reconsideration denied*, 686 F. Supp. 3d 1027 (S.D. Cal. 2023), *motion to certify appeal granted*, No. 3:17-cv-1709-JO-WVG, 2023 WL 6280967 (S.D. Cal. Sept. 26, 2023). Under the subjective intent approach, courts may also find that plaintiffs cannot establish commonality or typicality under 23(a). *See, e.g.*, *Pitt v. Metro. Tower Life Ins. Co.*, No. 20-cv-694-RSH-DEB, 2022 WL 17972167, at *4

(S.D. Cal. Dec. 1, 2022) (finding typicality not satisfied where "other class members may have chosen to terminate their policies, or let their policies lapse, or to timely reinstate their policies"); *Nieves*, 2023 WL 2705836, at *5 (concluding plaintiff could not establish typicality because, among other grounds, "absent class members may be subject to atypical defenses such as statute of limitations, waiver, estoppel, and failure to mitigate").

As Plaintiffs note on reply, (Reply at 15 n.5), this Court initially took the subjective intent approach when evaluating the plaintiff's motion for class certification in *Poe v. Northwestern Mutual Life Insurance Company* ("*Poe I*"), No. 8:21-cv-02065-SPG-E, 2023 WL 5251875 (C.D. Cal. Aug. 14, 2023), *reconsideration denied*, No. 8:21-cv-02065-SPG-E, 2023 WL 6852018 (C.D. Cal. Sept. 27, 2023).  In *Poe I*, the Court concluded that, because certain insureds likely intended to allow their policies to lapse, they would not have been injured by the defendant's noncompliance with the Statues. *Id.* at *9.  Thus, the Court agreed with the defendant insurer "that, absent policy-specific mini-trials, proving causation of damages across this putative class would be impossible." *Id.* at *7.  On summary judgment, however, this Court determined strict compliance was more in accordance with existing law.  Like the courts in *Bentley* and *Moriarty*, this Court held that, "[a]s a result of Defendant's failure to give the required notices, [the] life insurance policies did not lapse." *Poe v. Nw. Mut. Life Ins. Co.*, No. 8:21-cv-02065-SPG-E, 2023 WL 7273741, at *4 (C.D. Cal. Oct. 19, 2023) ("*Poe II*").  The Court further concluded that any inquiry into whether the decedent insured would have paid his premium on time had he received notice was "not necessary" because his policy remained in force regardless. *Id.* In so doing, the Court relied on the unpublished Ninth Circuit decision *Thomas v. State Farm Life Insurance Company*, No. 20-55231, 2021 WL 4596286, (9th Cir. Oct. 6, 2021), which, the Court noted, had held "that the failure to comply with insurance code notice requirements precludes a policy from lapsing." *Poe II*, 2023 WL 7273741, at *4.

This Court is again faced with the question of whether to take the strict compliance or subjective intent approach.  The Court concludes that, under longstanding principles of California insurance law, the strict compliance approach governs.  "In California, there is

no such thing as substantial compliance in furnishing notice that an insurance policy has been cancelled.  Termination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation." *Mackey v. Bristol W. Ins. Servs. of Cal., Inc.*, 105 Cal. App. 4th 1247, 1258 (2003) (citations omitted).  "If a cancellation is defective, the policy remains in effect even if the premiums are not paid." *Kotlar v. Hartford Fire Ins. Co.*, 83 Cal. App. 4th 1116, 1121 (2000).  In *Mackey*, for example, the insurer had attempted to cancel an automobile insurance policy but failed to provide at least ten days' notice to the insured, as was then required under California law. 105 Cal. App. 4th at 1254–55, 1259.  Even though the insured admittedly did not pay the premium on the date it was due, the Court concluded that the insurer's notice was "invalid and unenforceable." *Id.* at 1255, 1266.

Similarly, in *National Automobile & Casualty Insurance Company v. California Casualty Insurance Company*, an insurer's failure to give timely notice of nonrenewal resulted in the automatic renewal of the insured's policy, even though the insured had not paid his premium.  139 Cal. App. 3d 336, 341 (1983).[7]  And in *Fireman's Fund Insurance Company v. Allstate Insurance Company*, an insurance company remained liable for damages because it had failed to file statutorily required notice with the appropriate regulatory body, even though a period of six months passed between the time the insurance company attempted to cancel the policy and the insurable event occurred.  234 Cal. App. 3d 1154, 1166 (1991) ("*Fireman's Fund*").  The appellate court noted that, although the company's exposure "may seem unjust," the relevant regulations had "been on the books for decades" and the insurer "could have easily eliminated its exposure by simply filing the appropriate notice," a burden the court described as "minimal." *Id.*

---

[7] In contrast, in *Kates v. Workmen's Auto Insurance Company*, the insurer's warning that coverage would end in the event the insured failed to pay the premium complied with the relevant statutory requirements and accordingly provided sufficient notice of cancellation for an automobile policy.  45 Cal. App. 4th 494, 506–08 (1996).

Here, Defendant previously took the position that the Statutes did not apply to any policies it issued prior to 2013. (Opp. at 27). Accordingly, Defendant does not appear to have fully complied with the Statutes' notice requirements for these policies until after the California Supreme Court decided *McHugh* in 2021. (Mot. at 17–19; ECF No. 115-2 at 27–28). Defendant now argues that, even if Plaintiffs prove "uniform noncompliance," the Court can conclude that policies lapsed only after considering "specific evidence of each individual's motives." (Opp. at 27–28). But, although Plaintiffs must of course prove each element of breach of contract to prevail on their claims, Defendant's contention that it may validly lapse a policy after committing "a technical violation of the Statutes," (*id.* at 28), lacks support in California law.

To be sure, Defendant's position has intuitive appeal. It is plausible that, as Defendant posits, at least some insureds might choose to stop paying premiums with the understanding that this choice would lead their policies to lapse. In such cases, California's strict compliance requirement means that insurers who fail to provide proper notice may not lapse the insured's policy—an apparent windfall for insureds who expected their policies to expire due to intentional nonpayment. This consequence may seem harsh. But, as explained in *Fireman's Fund*, there are "sound reasons" for "plac[ing] the burden on insurers to comply with cancellation requirements." *Fireman's Fund*, 234 Cal. App. 3d at 1165–66. Such requirements "may deter lax practices in the insurance industry," and, importantly, an insurer may "easily eliminate[] its exposure by simply" complying with the cancellation requirements. *Id.* at 1166. This "minimal burden . . . is required to maintain the trustworthiness and vitality of statutes and regulations enacted to protect the public interest." *Id.* Accordingly, this Court rejects the subjective intent approach and evaluates Plaintiffs' Motion under a strict compliance framework.

### 2. Rule 23(b)(2)

A party seeking class certification under Rule 23(b)(2) must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

the class as a whole." Fed. R. Civ. P. 23(b)(2). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360 (emphasis in original). Furthermore, "[c]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688.

Here, Plaintiffs "seek a declaration, injunction, or judgment that class policies were improperly terminated—that those terminations were not legally effective—and, as such, the policies remain in force today despite nonpayment of premium." (Mot. at 28).[8] The Court evaluates each form of relief sought, beginning with Plaintiffs' request for declaratory relief.

### a) Declaratory Relief

Plaintiffs seek a declaration "that class policies were improperly terminated—that those terminations were not legally effective—and, as such, the policies remain in force today despite nonpayment of premium."[9] (Mot. at 28). As an initial matter, as Defendants emphasize, (Opp. at 24), for class members who are beneficiaries of decedent policyholders, declaratory relief is not appropriate because it is fully duplicative of their

---

[8] Plaintiffs no longer seek "an injunction . . . against Defendant stopping and remedying the ongoing violations of The Statutes," as pleaded in the FAC. (FAC at 29).

[9] Although Plaintiffs also purport to "seek a legal determination that The Statutes apply," (Mot. at 27), the Court agrees with Defendants that, in *McHugh*, the California Supreme Court mooted this request by holding that the Statutes apply to all policies in force as of January 1, 2013, (Opp. at 31). *See also McHugh*, 12 Cal. 5th at 220; *Farley*, 2023 WL 3007413, at *7 (finding moot similar request for declaratory relief).

breach of contract claims. Where a party "has a fully matured cause of action for money, he [or she] must seek damages, and not pursue a declaratory relief claim." *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 909–10 (2013), *as modified on denial of reh'g* (Mar. 7, 2013). *See also Steen*, 2023 WL 4004192, at *11. For living policyholders, however, declaratory relief will "serve a useful purpose in clarifying and settling the legal relations in issue." *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985). *See also Farley*, 2023 WL 3007413, at *8. Therefore, the Court in its discretion limits the Rule 23(b)(2) class to living policyholders. *See Doe v. Mindgeek USA Inc.*, 702 F. Supp. 3d 937, 952 (C.D. Cal. 2023) (noting that courts' "class management tools" include but are not limited to "the authority to alter or amend the class certification order pursuant to Rule 23(c)(1)(C)" and "to certify subclasses pursuant to Rule 23(c)(5)" (citation omitted)).

Defendant argues that Plaintiffs' requested declaratory relief is "but a re-packaged request for contract damages." (Opp. at 24). The Court disagrees. Indeed, as explained in greater detail below, Section III.B.3, Plaintiffs do not currently have a fully matured claim for contractual damages based on non-payment of death benefits. For Plaintiffs and for the vast majority of this class, which consists of the holders and beneficiaries of over 10,000 policies, *see* (Mot. at 19 n.9), declaratory and injunctive relief is the primary—if not sole—form of relief currently available. Plaintiffs themselves state that they "are *not* seeking any monetary recovery or damages on behalf of those class member policy owners whose insureds are still alive." (Mot. at 27 n.12 (emphasis in original)). The Court is satisfied that Plaintiffs' request for monetary damages for the beneficiaries of the approximately 41 policies formerly held by now-deceased policyholders, *see* (Reply at 20), "is merely incidental to their primary claim for injunctive [and declaratory] relief" regarding the remaining 99.6% of policies at issue. *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). *See also Farley*, 2023 WL 3007413, at *7 (reaching same conclusion where approximately 2% of class sought monetary damages).

Defendant also contends that class relief is inappropriate because the Court must consider policyholders' subjective intent to determine whether any given policy is still in

force.  (Opp. at 25–26).  But, as the Court has explained in detail, *see* Section III.B.1, the subjective intent approach to insurance policy lapses lacks grounding in California law. Because "[t]ermination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation," *Mackey*, 105 Cal. App. 4th at 1258, the issue of whether Defendant validly lapsed class members' policies does not require individualized inquiries into class members' subjective states of minds or expectations and is well-suited to class-wide resolution.[10]

Finally, during the hearing for this Motion, Defendant argued that declaratory relief would not be appropriate because some members of the class might not benefit from a declaratory judgment.  Some class members, for example, might have term policies that would have matured in the period since Defendant lapsed them.  A declaration that Defendant's prior termination of such policies would not help those policyholders, Defendant argued, because, given the passage of time, they would have no coverage even if Defendant *had not* lapsed their policies.  In other words, no harm, no foul.  Similarly, Defendant argued that a court might find other class members owe back premiums in excess of the value of their policy.  For these policyholders, Defendant contended, declaratory relief would actually be harmful.  The standard for declaratory relief, however, is not whether the relief will help one party or another, but whether it "will serve a useful purpose in clarifying and settling the legal relations in issue" and "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).  Additionally, Defendant's arguments depend on discrete matters of California insurance law not presently before the Court.  The Court is satisfied that, for living policyholders, declaratory relief will serve to clarify their relationships with Defendant.

---

[10] Defendant also repeats its arguments that declaratory relief is not appropriate because Plaintiffs purportedly do not "want" their policies, as evidenced through Plaintiffs' decision to decline Defendant's settlement offer and through certain statements Plaintiffs made during their depositions.  For the reasons set forth above, Section III.A.3, the Court declines to deny Plaintiffs' request for Rule 23(b)(2) certification on this ground.

*b)    Injunctive Relief*

Plaintiffs also seek injunctive relief.  Defendant opposes on the grounds that the injunction sought in Plaintiffs' motion "does not describe any action the Court could enjoin, classwide or otherwise."[11]  (Opp. at 23).  On reply, Plaintiffs contend that "a declaration that policies were ineffectively lapsed and are in-force is functionally no different than an injunction commanding the insurance company to deem the same policies 'in force.'"  (Reply at 19).

An injunction has "three fundamental characteristics": (1) it is "directed to a party"; (2) it is "enforceable by contempt"; and (3) it is "designed to accord or protect some or all of the substantive relief sought by a complaint in more than [temporary] fashion."  *In re Lorillard Tobacco Co.*, 370 F.3d 982, 986 (9th Cir. 2004) (citation omitted) (alteration in original).  Here, the Court agrees with Defendant that Plaintiffs' proposed injunction "that class policies were improperly terminated—that those terminations were not legally effective—and, as such, the policies remain in force today despite nonpayment of premium," (Mot. at 28), is ill-defined.  It is not directed at any particular party and does not appear to be enforceable by contempt.  Indeed, as formulated, Plaintiffs appear to request only declaratory relief, with the word "injunction" appearing to be surplusage.  Even on reply, Plaintiffs largely focus on the propriety of declaratory judgments—not injunctive relief—in insurance cases. (Reply at 19).  Additionally, Plaintiffs' Motion does not seek "an injunction commanding the insurance company to deem the . . . policies 'in force,'" (*id.*), nor does such a request appear in the FAC.  Accordingly, the Court DENIES this portion of Plaintiffs' motion for certification of a class under Rule 23(b)(2).

---

[11] Defendant also disputes Plaintiffs' proposed injunction to the extent it seeks to stop any ongoing violation of the Statutes. (Opp. at 22).  The Court agrees with Defendant that such an injunction would be inappropriate, because, among other reasons, it would be moot. *See* (Mot. at 28 (conceding that Defendant is presently complying with the Statutes and failing to argue that Defendant is likely to return to noncompliance)).

### 3.   Rule 23(b)(3)

In addition to seeking injunctive and declaratory relief under Rule 23(b)(2), Plaintiffs seek to certify a damages class under Rule 23(b)(3). (Mot. at 29–33).  Although Plaintiffs have not made the exact scope of the proposed damages class entirely clear, it appears that the class would, at minimum, encompass the beneficiaries of approximately 41 universal life insurance policies issued to policyholders who are now deceased. (Reply at 20).  To prevail on a motion for class certification under Rule 23(b)(3), the moving party must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These two requirements are commonly referred to as "predominance" and "superiority."  Rule 23(b)(3) further provides that "[t]he matters pertinent to these findings include:

> (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)   the likely difficulties in managing a class action.

*Id.*

In this case, however, the Court need not evaluate predominance or superiority because Plaintiffs do not have ripe claims for damages.  Ripeness, an essential part of Article III's case-or-controversy requirement, "requires that a case present issues that are definite and concrete, not hypothetical or abstract." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020) (internal quotation marks and citation omitted).  "[R]ipeness is often treated under the rubric of standing because ripeness coincides squarely with standing's injury in fact prong." *Bishop Paiute Tribe v. Inyo Cnty.*,

863 F.3d 1144, 1153 (9th Cir. 2017) (internal quotation marks and citation omitted).  As relevant here, "a plaintiff must demonstrate standing" and ripeness not only "for each claim he [or she] seeks to press" but also "for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks and citation omitted).  In class action litigation, "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks and citation omitted).

Here, Plaintiffs do not currently have ripe claims for damages based on non-payment of their life insurance death benefits because, although Mr. and Ms. Lee are one another's beneficiaries, they are both still alive.  The insured's death is a necessary condition precedent for any death benefit payment that, fortunately, has not yet occurred for either Plaintiff.  To be clear, Plaintiffs have standing to bring their breach of contract claims regarding their *own* life insurance policies—where, as here, a plaintiff can establish a concrete legal controversy and "a realistic danger" of future harm, standing does not require litigants to wait until they are harmed to file suit.  *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).  The parties' dispute over the status of Plaintiffs' insurance policies presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance *of a declaratory judgment*." *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015) (emphasis added) (citation omitted).  But Plaintiffs must show standing for each form of relief sought, *Davis*, 554 U.S. at 734, and they cannot currently do so.  Indeed, Plaintiffs expressly "are *not* seeking any monetary recovery or damages on behalf of those class member policy owners whose insureds are still alive." (Mot. at 27 n.12 (emphasis in original)).

Because Plaintiffs are not the correct parties to represent the proposed damages class, the Court DENIES Plaintiffs' request for certification of a class under Rule 23(b)(3)

without prejudice.  The Court notes, however, that if Plaintiffs wish to continue to seek certification of a damages class, they "will need to show good cause for amending the scheduling order" in order to "move to add a new class representative who can adequately represent the [damages class], and also to move to certify the [damages class]."[12]  *Farley*, 2023 WL 3007413, at *9.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, Plaintiffs' Motion.  The Court DENIES without prejudice Plaintiffs' motion for certification of a class under Rule 23(b)(3).  The Court GRANTS, in part, Plaintiff's motion for certification of a class under Rule 23(b)(2) and certifies the following class for declaratory relief:

> All living owners of Defendant's individual life insurance policies issued in California that Defendant lapsed or terminated for nonpayment of premium on or after January 1, 2013, without first providing every notice, grace period,

---

[12] Without making any determination on the merits, the Court also notes potential challenges in establishing superiority.  In particular, the first superiority factor evaluates "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  Here, the high dollar values of the policies at issue—which reach up to $4 million, (ECF No. 133-3 ¶ 19)—would give putative class members heightened interests in individually controlling prosecution of their claims, a hurdle Plaintiffs would need to overcome in order to establish superiority.  *Cf. Zinser*, 253 F.3d at 1190 ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.").

-24-

and offer of designation required by Insurance Code Sections 10113.71 and

      10113.72.

The Court appoints Plaintiffs as class representatives and appoints Nicholas & Tomasevic, LLP and Winters & Associates as class counsel.

**IT IS SO ORDERED.**

DATED:  August 20, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE